E-FILED
Monday, 17 March, 2014 02:09:08 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PERRY HARRINGTON, <br><br> Plaintiff, <br><br> v. <br><br> PETERSEN HEALTH OPERATIONS, <br><br> Defendant. | Case No. 13-cv-1024 |

# ORDER & OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment filed on February 3, 2013. (Doc. 23). Plaintiff's Complaint alleges that Defendant engaged in racial discrimination against Plaintiff by terminating his employment while retaining a White employee who committed a more severe offense. (Doc. 1). Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (the "EEOC") and the Illinois Department of Human Rights and received a right-to-sue letter from the EEOC. (Doc. 1 at 2).

Plaintiff has filed his Response (Doc. 25),[1] and the Motion is now fully briefed and ready for decision. For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

---

[1] On February 28, 2014, the Court, noted that Plaintiff had not yet filed a response to Defendant's motion for summary judgment. In the interests of affording a *pro se* litigant every reasonable opportunity to participate in the litigation, the Court granted the Plaintiff more time to file a response brief. (Text Order, February 28, 2014). Instead of filing a response brief though, Plaintiff filed an answer to requests for admission that Defendant served upon him in September of 2013. Thus Plaintiff has harmed his own case in two distinct ways—first, he failed to meaningfully respond to the motion for summary judgment and second, he failed to

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the Court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The Court draws only reasonable inferences. *Id.*

"Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes....'" *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)). This rule holds even in the case of a *pro se* litigant. *Id.* Once the movant has met its burden of showing the Court that there are no genuine issues of material fact, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S.

---

respond to the requests for admission in a timely fashion, which means all those requests are deemed admitted by operation of Federal Rule of Civil Procedure 36(a)(3); *United States v. Kasuboski*, 834 F.2d 1345, 1349 (7th Cir. 1987).

317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## BACKGROUND[2]

Plaintiff is an African-American man who worked at a facility called the Bloomington Rehabilitation and Healthcare Center (the "Center") from July 11, 2008 until September 23, 2011. The Center provides residential healthcare and rehabilitation services to individuals who require continual nursing care. These individuals are referred to as residents. The Defendant, Peterson Health Operations ("Peterson"), operates the Center. Plaintiff was employed at the Center as a housekeeper. Plaintiff's job duties for the Center required him to enter the rooms of residents of the Center in order to empty the wastebaskets located in those rooms. On or about July 11, 2008, Plaintiff signed a Bloomington Rehabilitation and Healthcare Center Housekeeper job description, which set forth certain responsibilities of a housekeeper including that a housekeeper had to keep all areas of the facility neat, clean, and in a sanitary condition, be familiar with nursing home care and relate well with residents of the facility. Plaintiff signed an acknowledgment that he had reviewed the provisions of the job description. Plaintiff was an at-will employee.

---

[2] These background facts are drawn from the Defendant's statement of undisputed material facts (Doc. 23 at 1-9).

On September 20, 2011, Plaintiff found feces located in a waste basket located in one of the residents' rooms while he was performing his duties. The resident was an eighty-nine years old White female. Plaintiff spoke to her about the contents of the wastebasket while he was emptying it. Plaintiff asked the resident whether she was "playing a joke" on him in reference to the "poop" in the wastebasket. He told her he could take a joke. Plaintiff emptied the wastebasket in question and left the resident's room.

At all times relevant, Janice L. Kindred ("Kindred") was employed by Peterson as the Administrator of the Center. As Administrator of the Center, Kindred was the highest ranking officer assigned to work at the Center on a daily basis. She oversaw all of the Center's operations and personnel. Kindred interviewed and hired Plaintiff to work at the Center in July 2008.

On September 20, 2011, Kindred was advised that one of the Center's residents was upset because of a comment made to her by Plaintiff. Kindred interviewed the resident that same day. Kindred perceived that the resident was highly upset by Plaintiff's statements to her. Kindred determined that she needed to continue her investigation by speaking to Plaintiff. The next day, Kindred met with Plaintiff and asked him to describe in his own words the events surrounding the resident and his conversation with her. Plaintiff told Kindred that he found "poop" in the resident's garbage can with Hershey Kisses papers on top of it. He admitted asking the resident if she was playing a joke on him and said he can take a joke. Kindred asked if these comments by Plaintiff upset the resident. Plaintiff replied that the resident was not upset because he told her that he was joking.

Kindred told Plaintiff that his comments had in fact upset the resident. Kindred asked Plaintiff why he made the comments, rather than just cleaning out the garbage can. Plaintiff replied that he was just joking. Kindred replied that Plaintiff needed to leave and that Kindred would contact him by telephone later. Later that same day, Kindred interviewed the resident in question again. She told the resident what Plaintiff had told her. Kindred observed the resident remained upset by Plaintiff's conduct.

Following the completion of Kindred's second interview of the resident, Kindred concluded that she could not allow Center employees to upset residents without good cause to do so. Although Kindred believed that Plaintiff probably did not intend any harm, he had in fact upset the resident by making statements to her that the resident perceived to be an accusation that she intentionally placed feces in the wastebasket. Kindred believed Plaintiff to be guilty of mistreating a Center resident. Peterson maintained for all times relevant to Plaintiff's employment a policy statement that provided that residents of the Center have a right to be free from abuse. Moreover, Illinois regulatory standards require the Center to protect its residents from physical and mental abuse from the Center's staff and to investigate and resolve on a timely fashion any report of abuse that comes to the Center's management's attention. Mistreatment of a resident is defined as a critical offense by the Center's Progressive discipline policy, with the consequence being immediate termination of employment.

This was not Plaintiff's first discipline issue at the Center. On April 23, 2010, Plaintiff received a Job in Jeopardy warning from Kindred for failing to properly

5

place "wet floor" signs in the Center's hallways that he had just mopped. He also mopped and buffed multiple areas at one time making navigation through the hallways difficult to accomplish safely. Kindred advised Plaintiff that any future failure to meet job expectations could result in the termination or suspension of his employment.

On September 23, 2011, Kindred told Plaintiff that his employment at the Center had been terminated. Kindred told Plaintiff that he was being discharged because of the comments he made to the resident, comments that apparently so upset the resident that Kindred would not feel comfortable with him staying. Kindred thereafter escorted Plaintiff to the door of the facility.

Plaintiff maintains that he was actually fired because of his race. He maintains that a White Center employee committed actual physical abuse against residents and was retained.[3] Plaintiff filed a Charge of Discrimination against Peterson before the Illinois Department of Human Rights and the EEOC on or about February 14, 2012. On June 5, 2012, the Illinois Department of Human Rights dismissed the Charge of Discrimination. On October 12, 2012, the EEOC adopted the findings of the Illinois Department of Human Rights, closed its file and issued to Plaintiff a Right to Sue letter.

Kindred has reviewed the Center's records for the months of July, August, and September 2011. Kindred has not found nor can she recall any report of an incident of resident abuse which occurred two months prior to Plaintiff's discharge

---

[3] On September 10, 2013, Plaintiff was served with a set of interrogatories, one of which asked to identify the non-African-American employees in question. Plaintiff never responded to the interrogatories.

as alleged in his Complaint. Kindred does recall, however, in March 2011, that Kindred received a report that a White Center employee named Michelle Russell was accused of being "rough" with certain residents and that as a result these residents were scared of her. Kindred determined that Russell was not as gentle as she should have been when providing care to those residents. Kindred was prepared to discharge Ms. Russell for mistreating Center residents but Ms. Russell asked Kindred for an opportunity to resign in lieu of discharge. Kindred agreed to accept Russell's immediate resignation on March 28, 2011.

Kindred maintains that she did not discharge Plaintiff because of his race, but rather solely for the reasons set forth above.

## DISCUSSION

Plaintiff claims that he was discriminated against on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Doc. 1 at 2). Defendant moves for summary judgment as to each of these claims. (Doc. 23). A plaintiff can prove discrimination either directly, such as by an admission by the defendant, or indirectly under the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

## I. Direct Method

The direct method of proving discrimination utilizes either direct or circumstantial evidence. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). Direct evidence typically constitutes an admission or near-admission that the defendant was motivated by the improper cause, here race, in acting against the plaintiff. *Id.* A plaintiff may also proceed under the direct method by offering

7

circumstantial evidence to "establish an inference of discrimination." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Such evidence usually falls into one of three categories: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Id.* at 1114-15 (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007); citing *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008)).

There are no admissions or near-admissions on the record before the Court of any race-based decision-making by Defendant nor is there any circumstantial evidence sufficient to establish an inference of discrimination. Here, Plaintiff only alleges he was the victim of racial discrimination in that he was treated worse than a White employee who committed a more egregious act.[4]

"All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citing *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008)). Thus, Plaintiff's allegation that a White employee committed a more egregious act against a Center

---

[4] Evidence of an employer's preferential treatment of similarly situated employees outside of the plaintiff's protected class bears on both the "direct method-circumstantial branch" and the "indirect method" of proving discrimination claims. *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).

resident and was allowed to remain by Kindred while she fired him for merely asking a resident if she was responsible for "poop" in a waste can would seem sufficient to infer racial discrimination. However, there is not a scintilla of evidence in the record that a White employee was allowed to remain employed by the Center after having abused residents. Defendant admits a White female employee was rough with residents, but this employee was immediately forced to leave the Center. While she was not "terminated" *per se*, she was still forced out. Plaintiff is not alleging that allowing the White female employee to resign in lieu of termination was better treatment than he received. Even if he were making that allegation, it would fail, since the material fact is that the White female employee was immediately required to leave the Center's employ and so was he.

Plaintiff's unsupported allegation in his complaint is insufficient to withstand a summary judgment motion that is supported by the affidavit testimony. Once the summary judgment movant has met his burden of showing the Court that there are no genuine issues of material fact, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial" to survive summary judgment. *Warsco*, 258 F.3d at 563 (*citing Celotex Corp.*, 477 U.S. 317, 324 (1986)). Plaintiff has not submitted anything to survive summary judgment; not even his own affidavit for example.

Therefore, Plaintiff's claim of racial discrimination fails under the direct method and the Court will now consider whether his claim can survive under the indirect method.

## II. Indirect Method

Under the indirect method, *McDonnell Douglas* places the initial burden on the plaintiff to establish a *prima facie* case, which is the same whether the claim is brought under Title VII or § 1981. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060–61 n. 4 (7th Cir. 2003) (citations omitted). A *prima facie* case of discrimination is established if the employee provides evidence that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations at the time of the alleged adverse action; (3) he was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

Plaintiff cannot satisfy all elements of the *prima facie* claim of racial discrimination. Plaintiff is African-American and was terminated, which satisfies the elements of being in a protected class, *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009), and suffering an adverse employment action. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). However, he failed to meet his employer's legitimate expectations at the time of his termination. The Defendant has presented uncontroverted evidence that it expected its staff not to upset its residents and that Plaintiff unfortunately upset a resident. Lastly, as discussed in the section above, Plaintiff cannot show that Defendant treated any similarly situated employees outside of Plaintiff's protected class more favorably.

## CONCLUSION

Although the Court considers Plaintiff's offense to be relatively trivial and the Defendant's decision to terminate him excessive, the Court does "not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005). The Seventh Circuit has clearly instructed that "[f]ederal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair." *Ptasznik*, 464 F.3d at 697. The Court cannot say—and there is no genuine issue of material fact—that the Defendant acted unlawfully. Plaintiff was an at-will employee. An "at-will" employee is one who has not entered into a contract with their employer and who can be discharged from their job for any reason at any time, no matter how arbitrary, so long as the reason does not violate anti-discrimination laws such as Title VII and Section 1981. *See Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 628 (7th Cir. 2009). Thus, although the Defendant likely overreacted, there are no facts present in the record from which a finder of fact could conclude Plaintiff was discharged on the basis of his race.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 23) is GRANTED. IT IS SO ORDERED. CASE TERMINATED.

Entered this 17th day of March, 2014.

                                                                                                  s/ Joe B. McDade
                                                                                                  JOE BILLY McDADE

                                                United States Senior District Judge